IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **DAVID KYLE MORRIS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-610-SDJ-KPJ |
| | § | |
| **KILOLO KIJAKAZI,** | § | |
| *Acting Commissioner of Social Security*, | § | |
| | § | |
| Defendant. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff David Kyle Morris ("Mr. Morris") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his claims for disability insurance benefits. Having considered the briefs submitted by the parties and the administrative record, the Court recommends the Commissioner's final decision be **REVERSED** and **REMANDED**.

I.   APPLICABLE LAW

A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. *See* 20 C.F.R. §404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140

1

(1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[1] of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv); *see also Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show his impairment meets or equals a Listing but proves that he is unable to perform his "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *See Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

### B. Standard of Review

The standard of review in a social security appeal is whether the Commissioner's final decision[2] is "'supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence.'" *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (per curiam) (quoting *Villa*, 895 F.2d at 1021). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, as it is in this case. *See* 20 C.F.R. § 416.1481.

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence "must be more than a scintilla, but it need not be a preponderance." *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (citing *Perales*, 402 U.S. at 401). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (per curiam) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam) (internal quotation omitted)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475) (internal quotations omitted). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985) (internal quotations omitted).

## II.    BACKGROUND AND PROCEDURAL HISTORY

Mr. Morris was born in 1972 and completed high school.[3] *See* Tr. 61, 177. Mr. Morris served in the United States military, and from 1998 until 2016, he was employed as a detective by the City of Frisco Police Department. *See id.* at 62, 64. From 2015 until 2016, Mr. Morris was employed as a salesperson. *See id.* at 82–83. On January 16, 2019, Mr. Morris filed an application for disability insurance benefits, alleging disability due to "Depression, Chronic PTSD, Degenerative Joint Disease, Anxiety, Hypertension, Coronary Heart Disease, Arthritis of Spine, Chronic Fatigue Syndrome, Irritable Bowel Syndrome, [and] Coronary Arteriosclerosis." *Id.* at 86–87. Mr. Morris initially alleged the date of onset of his disability to be September 1, 2016, but later amended his alleged onset date to February 27, 2018. *See id.* at 61, 86. The Social Security Administration ("SSA") denied Mr. Morris's claims initially on April 23, 2019, and upon reconsideration on December 18, 2019. *See id.* at 86–98, 100–13. Thereafter, Mr. Morris filed a written request for a hearing. *See id.* at 126. On October 8, 2020, Administrative Law Judge Jana Kinkade (the "ALJ") held a hearing. *See id.* at 57–85. The hearing was attended by Mr. Morris, his attorney, and a vocational expert. *See id.* at 59.

On November 19, 2020, the ALJ issued an unfavorable decision denying Mr. Morris's claims. *See id.* at 17–42. In her decision, the ALJ found Mr. Morris met the insured status requirements of the Social Security Act (the "Act") through December 31, 2021. *See id.* at 22. At step one, the ALJ found Mr. Morris had not engaged in substantial gainful activity since September 1, 2016, his alleged onset date. *See id.*[4] At step two, the ALJ found Mr. Morris had the following

---

[3] Documents 9-1 through 9-19 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[4] The Court notes that during the Hearing, Mr. Morris's counsel requested that the alleged onset date be amended to February 27, 2018, and the ALJ granted the request. *See* Tr. 61–62. Accordingly, the alleged onset date as set forth in the ALJ's decision is incorrect.

severe impairments: degenerative disc disease of the lumbar spine; chronic fatigue syndrome; obesity; diabetes mellitus; hypertension; bilateral hearing loss; obstructive sleep apnea; Barrett's esophagus; irritable bowel syndrome; right carpal tunnel syndrome; coronary artery disease; anxiety disorder; major depressive disorder; and post-traumatic stress disorder. *See id*. At step three, the ALJ found none of Mr. Morris's impairments, alone or in combination, met or medically equaled the severity of a Listing. *See id.* at 28–30. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Morris's RFC. *See id.* at 30. The ALJ found Mr. Morris had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except he can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for about 6 hours in an 8-hour workday. He can sit for about 6 hours in an 8-hour workday. He can occasionally push and/or pull. He can never climb ladders, ropes, or scaffolds. He can occasionally climb ladders, ropes or scaffolds, stoop, kneel, crouch, and crawl. He can frequently balance. He can frequently handle and finger. He needs to avoid exposure to hazards such as unprotected heights and unguarded moving machinery. He can understand, remember, and carry out simple routine tasks and simple decision-making in an environment that involves few, if any, workplace changes. He can occasionally interact with supervisors, co-workers, and the public.

*Id.* at 30.[5] At step four, the ALJ found Mr. Morris was unable to perform his past work as a detective and salesperson. *See id.* at 36. At step five, the ALJ found Mr. Morris could perform the following jobs that exist in significant numbers in the national economy: food inspector; belt inspector; and cloth inspector. *See id.* at 36–37. Accordingly, the ALJ concluded Mr. Morris was not disabled within the meaning of the Act. *See id.* at 37.

Mr. Morris requested that the Appeals Council review the ALJ's unfavorable decision. *See id.* at 172. On June 4, 2021, the Appeals Council denied the request for review. *See id.* at 6–8. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530

---

[5] The RFC is contradictory, stating that Mr. Morris "can never climb ladders, ropes, or scaffolds" and that he "can occasionally climb ladders, ropes or scaffolds." *Id.*

U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). On August 3, 2021, Mr. Morris filed his appeal to this Court.[6] *See* Dkt. 1.

### III.    ANALYSIS

Mr. Morris raises multiple arguments on appeal. Overall, Mr. Morris argues the decision of the ALJ is not supported by substantial evidence. *See* Dkt. 11 at 6. More specifically, Mr. Morris first argues the ALJ improperly rejected evidence of Mr. Morris's need for a handheld assistive device such as a cane or walker. *See id.* at 6–8. Second, Mr. Morris argues the ALJ improperly failed to consider functional limitations resulting from all impairments the ALJ deemed to be severe. *See id.* 8–9. Third, Mr. Morris argues the ALJ improperly substituted her own opinions for the opinions of State Agency medical consultants ("SAMCs") to determine Mr. Morris's functional limitations. *See id.* at 9–11. And fourth, Mr. Morris argues the ALJ improperly rejected medical opinion evidence as to Mr. Morris's mental limitations. *See id.* at 11–14. The Court finds persuasive Mr. Morris's argument regarding the ALJ's rejection of evidence of Mr. Morris's need for a handheld assistive device. As such error was not harmless, remand is warranted.[7]

#### A.  Use of a Handheld Assistive Device

SSR 96-9P provides: "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the

---

[6] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* Tr. 7.

[7] Because the Court finds remand is warranted on this basis, the Court does not reach Mr. Morris's other arguments.

6

time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." 1996 WL 374185, at *7 (S.S.A. July 2, 1996).[8]

The ALJ found generally that "the medical evidence of record does not substantiate the claimant's requirement for the use of a handheld assistive device, can[e] or Rol[l]ator." *Id.* at 36. In support of her finding, the ALJ generally noted that "[t]he claimant's musculoskeletal exam was normal" and "[t]he evaluation by UT Southwestern neurologists also does not support the use of an assistive device." *Id.* at 35 (citing Ex. 4F). The ALJ further noted that "[a]t various times throughout the record, [Mr. Morris] was noted to walk with a cane but there is no mention of him ambulating with a Rol[l]ator." *Id.* (citations omitted). In addition, the ALJ seemed to find, without explanation, that the record evidence was insufficient to meet the "medical documentation" standard set forth in SSR 96-9P. *See id.* at 35–36.

Mr. Morris contends, "[h]aving acknowledged that [Mr. Morris's] treatment sources recommended use of a walker, with evidence in the record that a rollator walker was ordered for him, he was fitted for the rollator walker and for a single-tipped cane and was instructed in the use of these devices, there is no basis for the ALJ's determination that use of a rollator walker or cane is not required." Dkt. 11 at 7. The Commissioner responds that the ALJ's findings on this issue were supported by substantial evidence, as the ALJ discussed the relevant objective medical evidence and detailed her reasoning for discounting evidence that would have supported a finding that Mr. Morris needs a handheld assistive device. *See* Dkt. 12 at 9–10.

---

[8] "The Social Security Administration's rulings are not binding on this Court, but they may be consulted when the statute at issue provides little guidance. The Fifth Circuit has frequently relied upon the rulings in evaluating ALJ's decisions." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam) (citations omitted). The Fifth Circuit has implicitly acknowledged the persuasive authority of SSR 96-9P. *See Ramirez v. Colvin*, 606 F. App'x 775, 778 (5th Cir. 2015) (per curiam); *Alexander v. Astrue*, 412 F. App'x. 719, 723 (5th Cir. 2011) (per curiam).

On May 6, 2019, Mr. Morris attended an appointment with Huma Naz, M.D. ("Dr. Naz"). *See* Tr. 908–12. In the record of this appointment, noted as a "Primary Care Note", Dr. Naz documented that "[due to Mr. Morris's] balance secondary to muscle fatigue he would benefit from a rol[l]ator." *Id.* at 909. Dr. Naz further documented that Mr. Morris was a "****HIGH FALL RISK****." *Id.* The ALJ found Dr. Naz's statement that Mr. Morris would "benefit" from an assistive device "appears to be based on the subjective report of the claimant and not based on functional abilities." *Id.* at 35–36. However, the ALJ did not state the basis for her finding that the "benefit" statement was based on Mr. Morris's self-report, nor did she discuss Dr. Naz's documented medical basis regarding his finding that Mr. Morris would benefit from a Rollator. Dr. Naz's medical opinion that "balance", "muscle fatigue", and "****HIGH FALL RISK****", contextualize "benefit" as based on Dr. Naz's medical opinion. *Id.* at 909.

The conclusion that Mr. Morris needs an assistive device is buttressed by Dr. Naz referring Mr. Morris for a "Prosthetic Device Consult" with Physical Therapist Robert C. Fair ("PT Fair"). *See id.* at 907–08. In the record of the consult, PT Fair noted that Mr. Morris was "fitted, demonstrated, and provided F-22 Rollator walker and Standard [cane] [and] trained on both ambulation devices for improved safety within the home setting." *Id.* at 908. This documentation further contextualizes the medical basis of Mr. Morris's need for an assistive device and describes the circumstances of Mr. Morris's need for device, i.e., "for improved safety within the home setting". *Id.*; *see* SSR 96-9P, 1996 WL 374185, at *7 (S.S.A. July 2, 1996); *Coleman v. Astrue*, No. 3-10-cv-1919, 2011 WL 6182338, at *3 (N.D. Tex. Dec. 13, 2011) ("Here, there is ample evidence from treating medical sources that plaintiff needs a walker to safely ambulate about the workplace. In August 2007, a physical therapist . . . noted that plaintiff was instructed in 'the advantages of gait assistance devices.'"). Further, on multiple occasions, Mr. Morris was noted to

8

be using a cane to ambulate outside of his home. For example, on, May 15, 2019, psychologist Mac Walling, Ph.D., noted in his examination report that Mr. Morris "ambulates with a cane and appears unsteady." Tr. 796. And during the Hearing, Mr. Morris testified that he uses a cane or Rollator when ambulating inside and outside his home. *See id.* at 69–70.

The ALJ generally cited to "[e]valuation of UT Southwestern neurologists" in support of her conclusion that a handheld assistive device is not needed. Tr. 35 (citing Ex. 4F). However, the ALJ does not elaborate as to which evaluation(s) she is referring within Exhibit 4F (which is over 100 pages), and how the neurologists' evaluation sheds light on Mr. Morris's need, or lack thereof, for an assistive device. Therefore, in addition to erroneously rejecting the reports of Dr. Naz and PT Fair, the ALJ did not cite to any medical opinion which found that Mr. Morris did *not* need an assistive device. *See Coleman*, 2011 WL 6182338, at *4 ("Finally, a report prepared by [a doctor] . . . indicates that plaintiff uses a four-wheeled walker in order to ambulate. Nowhere in his report does [the doctor] conclude that use of hand-held assistive device was unnecessary."); *cf. Cashin v. Astrue*, No. EDCV 09–161, 2010 WL 749884 at *11 (C.D. Cal. Feb. 24, 2010) (upholding finding that cane was not medically necessary where, *inter alia*, doctor determined that plaintiff actually walked better without cane).

"In short, this is not a case where [the claimant] was given a walker only because [he] requested one. Rather, there is objective medical evidence that plaintiff needs a hand-held assistive device to aid in walking or standing." *Coleman*, 2011 WL 6182338, at *4; *cf. Carrillo v. Saul*, No. 4:19-cv-00371, 2020 WL 3442054, at *5 (N.D. Tex. June 4, 2020), *R. & R. adopted*, 2020 WL 3440884 (N.D. Tex. June 22, 2020) ("While the medical records periodically mention [the plaintiff's] use of a cane, none of them state that it was medically necessary. Instead, they simply note [the plaintiff's] own account of his use of a cane or observations that he had brought his cane

9

with him to the evaluations."); *Johnson v. Berryhill*, 2017 WL 1105720, at *11 (N.D. Tex. Mar. 24, 2017) (finding the ALJ did not err in omitting the use of a cane in the RFC because "none of the records state that it was medically necessary, and they simply note that she brought her own cane with her to the evaluations").

Accordingly, the Court finds that the ALJ erred when she rejected the medical documentation of Mr. Morris's need for an assistive device for ambulation.

### B. Whether the Error was Harmless

Error is reversible and requires remand only "when a reviewing court concludes that the error is not harmless." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (per curiam). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citing *Frank*, 326 F.3d at 622; *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)). It is the claimant's burden to show that the error was not harmless. *See Keel v. Saul*, 986 F.3d 551, 557 (5th Cir. 2021) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (noting that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination")). "'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam)).

Mr. Morris argues the ALJ's error was not harmless because the VE testified that use of an assistive device would preclude Mr. Morris from performing the light jobs the ALJ found he could perform. *See* Dkt. 11 at 7. Mr. Morris further argues that in formulating the RFC, the ALJ erroneously did not consider Mr. Morris's muscle fatigue and balance problems, absent use of a handheld assistive device. *See id.* at 7–8. The Court agrees. All of the occupations the ALJ found

Mr. Morris could perform involve light exertion. *See* Tr. 37. The VE testified that the use of a handheld assistive device would preclude light exertion jobs. *See id.* at 80. Further, had the ALJ properly considered the handheld assistive device evidence and Mr. Morris's muscle fatigue and balance problems overall, the ALJ may have assessed a different RFC. What RFC the ALJ would have assessed and what jobs, if any, the ALJ would have found Mr. Morris could perform is speculative. As such, remand is warranted. *See Coleman*, 2011 WL 6182338, at *4 ("Had the ALJ considered [the evidence about the plaintiff's use of a handheld assistive device] in evaluating plaintiff's residual functional capacity, it is quite possible the judge would have found that plaintiff could not perform the job of cashier . . . . Under these circumstances, remand is required.") (citations and footnote omitted).

## IV.     RECOMMENDATION

For the foregoing reasons, the Court recommends the Commissioner's final decision be **REVERSED** and **REMANDED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th

Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 1st day of March, 2023.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE